**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **ANGELA LYNETTE COY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No. <u>3:21-cv-00716</u>** |
| | ) |
| **TRANS UNION, LLC,** | ) |
| **SERVE:**   **Corporation Service Company, Reg. Agent** | ) |
|       **100 Shockoe Slip** | ) |
|       **2nd Floor** | ) |
|       **Richmond, VA 23219** | ) |
| | ) |
| **and** | ) |
| | ) |
| **CONDUENT EDUCATION SERVICES, LLC,** | ) |
| **SERVE:**   **Corporation Service Company, Reg. Agent** | ) |
|       **100 Shockoe Slip** | ) |
|       **2nd Floor** | ) |
|       **Richmond, VA 23219** | ) |
| | ) |
|       **Defendants.** | ) |
| | ) |

## <u>COMPLAINT</u>

COMES NOW the Plaintiff, ANGELA LYNETTE COY, by counsel, and for her complaint against each of the Defendants, alleges as follows:

**I.**

### PRELIMINARY STATEMENT

1.      Defendants TRANS UNION, LLC, and CONDUENT EDUCATION SERVICES, LLC have violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681a–x ("FCRA") by continuing to improperly report on Plaintiff's credit derogatory information regarding several of Plaintiff's student loan accounts, falsely indicating the accounts were included or discharged in bankruptcy.

2.      Defendants continued to report inaccurate and derogatory information on Plaintiff's credit regarding these accounts even after receiving from Plaintiff multiple disputes, requesting that the inaccurate and derogatory reporting be corrected.

3.      Defendants' violations include: failing to properly investigate Plaintiff's disputes and failing to maintain reasonable procedures to assure maximum possible accuracy of the information in Plaintiff's credit files. Through these failures, and by improperly reporting on Plaintiff's credit, Defendants violated, repeatedly and over an extended period of time, Plaintiff's rights under the FCRA. Accordingly, Plaintiff seeks actual damages, attorney's fees and costs, and punitive damages for Defendants' willful violations of the FCRA.

## II.

### JURISDICTION AND VENUE

4.      The jurisdiction of this Court is conferred by 15 U.S.C. §1681(p) and 28 U.S.C. §1331.

5.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

## III.

### PARTIES

6.      Plaintiff ANGELA LYNNETTE COY ("Ms. Coy" or "Plaintiff") is a natural person and "consumer" as defined by § 1681a(c) of the FCRA. Ms. Coy resides in the City of Richmond, Virginia, which falls within the Richmond Division of the Eastern District of Virginia.

7.      Defendant TRANS UNION, LLC ("Trans Union") is a limited liability company formed in Delaware and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

8.      Trans Union is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Trans Union is regularly engaged in the business of assembling, evaluating, and disbursing to third parties information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. § 1681a(d).

9.      Trans Union disburses consumer reports to third parties, under contract, for monetary compensation.

10.     Defendant CONDUENT EDUCATION SERVICES, LLC ("Conduent") is a limited liability company formed in Delaware and authorized to do business in the Commonwealth of Virginia through its registered offices in Richmond, Virginia.

11.     With respect to the account it reported on Plaintiff's credit, Conduent is a "furnisher" as governed by the FCRA.

## IV.

### FACTS

**A.      Background**

12.     Plaintiff entered into federal education loan agreements on February 15, 2005 (one loan), September 20, 2005 (one loan), and June 16, 2008 (two loans), respectively, to finance the costs associated with her college education (these four loans are collectively referred to herein as the "ACS Student Loans").

13.     On June 19, 2014, Plaintiff filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Virginia, Richmond Division, Case No. 14-33333-KRH (the "2014 Bankruptcy"). Relief was ordered.

14.     Upon information and belief, at the time of the filing of the 2014 Bankruptcy, the ACS Student Loans were open and serviced by ACS Education Services, LLC.

15.     Upon information and belief, during the pendency of the 2014 Bankruptcy, ACS Education Services, LLC transferred the servicing of the ACS Student Loans to Navient Solutions Inc. ("Navient").

16.     On December 15, 2015, the bankruptcy court entered an order dismissing the 2014 Bankruptcy.

17.     On January 8, 2016, Plaintiff filed another voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code in the Eastern District of Virginia, Richmond Division, Case No. 16-30112 (the "2016 Bankruptcy"). Relief was ordered.

18.     Upon information and belief, at the time of the filing of the 2016 Bankruptcy, the ACS Student Loans were open and serviced by Navient.

19.     On April 2, 2018, Plaintiff converted the 2016 Bankruptcy to a case under Chapter 7 of the Bankruptcy Code.

20.     On July 5, 2018, the bankruptcy court entered a Discharge of Debtor in Plaintiff's 2016 Bankruptcy, pursuant to 11 U.S.C. §727 of the Bankruptcy Code (the "Discharge").

21.     The ACS Student Loans were not included in Plaintiff's Discharge, pursuant to 11 U.S.C. §523(a)(8) of the Bankruptcy Code, which, except in limited circumstances, specifically excepts educational debts such as Plaintiff's ACS Student Loans from being discharged in bankruptcy.

22.     After receiving her Discharge, Plaintiff hoped and believed her credit problems were behind her and that, based on her faithful completion of all of her obligations to obtain her Discharge, she would be allowed to receive a fresh start from her indebtedness and rebuild her credit.

23.     On or about March 13, 2017, ACS Education Services, LLC merged with and into Conduent Education Loan Services, LLC.

24.     On or about June 18, 2021, Conduent Education Loan Services, LLC merged with and into Conduent.

**B.      Inaccurate and Derogatory Reporting by Trans Union.**

25.     In or around June or July 2018, Plaintiff approached Crown Acura Richmond, located in Richmond, Virginia, seeking to purchase a vehicle. In connection with her request to finance the purchase of a vehicle, Plaintiff submitted a credit application to the finance department at Crown Acura Richmond.

26.     Upon information and belief, in order to further explore finance options that might be available to Plaintiff, Crown Acura Richmond's finance department also approached Regional Acceptance Corporation and Exeter Finance Corporation, as well as several other lenders, regarding Plaintiff's credit application.

27.     On or about July 30, 2018, in connection with Plaintiff's credit application, Trans Union furnished to Regional Acceptance Corporation a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's ACS Student Loans.

28.     On or about August 28, 2018, in connection with Plaintiff's credit application, Trans Union furnished to Exeter Finance Corporation a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding Plaintiff's ACS Student Loans.

29.     Upon information and belief, because of derogatory information being reported in her Trans Union consumer report, Plaintiff's financing options were limited. Although Plaintiff received an offer to extend credit, the proposed terms of the financing would have required

Plaintiff to pay an extremely high annual interest rate. Therefore, Plaintiff did not accept the proposed loan.

30.     On or about October 5, 2018, Plaintiff applied for credit, in the form of a Target credit card, with TD Bank. Plaintiff's application was denied. Upon information and belief, TD Bank relied upon inaccurate and derogatory information contained in a consumer report provided by Trans Union in making its decision to deny the extension of credit to Plaintiff.

31.     On or about May 7, 2019, Plaintiff applied for credit with Continental Finance Company. Upon information and belief, in connection with Plaintiff's credit application, Trans Union furnished to Continental Finance Company a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding the ACS Student Loans.

32.     On or about June 29, 2019, Plaintiff applied for credit with Capital One. Upon information and belief, in connection with Plaintiff's credit application, Trans Union furnished to Capital One a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding the ACS Student Loans.

33.     In or around August 2019, Plaintiff requested a copy of her credit disclosure from Trans Union. Plaintiff subsequently obtained a credit disclosure from Trans Union dated August 26, 2019 (the "2019 Disclosure").

34.     The 2019 Disclosure revealed that Trans Union was inaccurately reporting derogatory information about the ACS Student Loans. Specifically, Trans Union was reporting each of the four ACS Student Loan accounts with remarks of "Chapter 13 Bankruptcy", and an indication that the derogatory reporting about each of the ACS Student Loan accounts would continue until May 2021.

35.     Trans Union's reporting of derogatory information regarding the ACS Student Loan accounts was inaccurate because none of the four ACS Student loans were discharged in or affected by Plaintiff's bankruptcy case. Instead, those ACS Student Loans were specifically excepted from Plaintiff's Discharge, pursuant to 11 U.S.C. § 523(a)(8). Therefore, any derogatory information referencing Plaintiff's bankruptcy case should have been excluded from the trade lines related to the ACS Student Loan accounts.

**C.     Plaintiff's First Dispute Letter to Trans Union.**

36.     On or about December 12, 2019, Plaintiff sent Trans Union a letter, dated December 12, 2019, via certified mail, to dispute the inaccurate and derogatory information set forth in the 2019 Disclosure (the "First Dispute Letter").

37.     Plaintiff paid to the United States Postal Service the costs associated with mailing the First Dispute Letter via certified mail.

38.     In the First Dispute Letter, Plaintiff advised Trans Union that the ACS Student Loans were not included or discharged in her bankruptcy case, and she disputed Trans Union's reporting of derogatory information regarding the bankruptcy in each of the four ACS Student Loan trade lines. Plaintiff requested that Trans Union correct or delete the inaccurate and derogatory information it was reporting about the ACS Student Loans.

39.     On December 16, 2019, Trans Union received Plaintiff's First Dispute Letter.

40.     In response to the First Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated January 3, 2020.

41.     In its January 3, 2020 reinvestigation results, Trans Union advised Plaintiff that it updated the information being reported about each of the ACS Student Loan accounts. Nevertheless, the reinvestigation results revealed that Trans Union continued to report inaccurate

and derogatory information about the ACS Student Loans. Specifically, in each of the four ACS Student Loan account trade lines, Trans Union was reporting a pay status of "Account Included in Bankruptcy" and remarks of "Chapter 13 Bankruptcy", along with an indication that the derogatory reporting about each of the ACS Student Loan accounts would continue until May 2021.

42.     On or about January 10, 2020, Plaintiff applied for credit, in the form of a QVC Credit Card, with Synchrony Bank. Plaintiff's application was denied. Upon information and belief, Synchrony Bank relied upon inaccurate and derogatory information contained in a consumer report provided by Trans Union in making its decision to deny the extension of credit to Plaintiff.

**D.     Plaintiff's Second Dispute Letter to Trans Union.**

43.     On or about March 9, 2020, Plaintiff sent Trans Union a second letter, dated March 5, 2020, via certified mail, to dispute the inaccurate and derogatory information being reported on her credit (the "Second Dispute Letter").

44.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Second Dispute Letter via certified mail.

45.     In the Second Dispute Letter, Plaintiff again disputed the derogatory information Trans Union was reporting regarding each of the four ACS Student Loans. Specifically, Plaintiff advised Trans Union that the ACS Student Loans were not included or discharged in her bankruptcy case, and she disputed Trans Union's reporting of derogatory information regarding the bankruptcy in each of the four ACS Student Loan trade lines. Plaintiff requested again that Trans Union correct or delete the inaccurate and derogatory information it was reporting about the ACS Student Loans.

46.     On March 12, 2020, Trans Union received Plaintiff's Second Dispute Letter.

47.     In response to the Second Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated March 16, 2020.

48.     In its March 16, 2020 reinvestigation results, Trans Union failed again to correct the information that Plaintiff disputed with respect to each of the four ACS Student Loan accounts. The reinvestigation results revealed that, with respect to each of the four ACS Student Loan accounts, Trans Union continued to report a derogatory pay status of "Account Included in Bankruptcy", and merely updated the remarks about each of those accounts from "Chapter 13 Bankruptcy" to "Chapter 7 Bankruptcy". Trans Union also continued to indicate that the derogatory reporting about each of the ACS Student Loan accounts would continue until May 2021.

**E.     Plaintiff's Third Dispute Letter to Trans Union.**

49.     On or about May 6, 2020, Plaintiff sent Trans Union a third letter, dated May 5, 2020, via certified mail, to dispute the inaccurate and derogatory information being reported on her credit (the "Third Dispute Letter").

50.     Plaintiff paid to the United States Postal Service the costs associated with mailing the Third Dispute Letter via certified mail.

51.     In the Third Dispute Letter, Plaintiff again disputed the derogatory information Trans Union was reporting regarding each of the four ACS Student Loans. Specifically, Plaintiff advised Trans Union that the ACS Student Loans were not included or discharged in her bankruptcy case, and she disputed Trans Union's reporting of derogatory information regarding her bankruptcy in each of the four ACS Student Loan trade lines. Plaintiff requested again that

Trans Union correct or delete the inaccurate and derogatory information it was reporting about the ACS Student Loans.

52.     Plaintiff enclosed with the Third Dispute Letter copies of the relevant schedules from her 2016 Bankruptcy, which reflected a notation of "Student Loan-Notice Only" with respect to the ACS Student Loans, to demonstrate that those debts were not to be discharged in bankruptcy, and that she listed the ACS Student Loans in her schedules merely to meet her obligations under the Bankruptcy Code of providing notice of the bankruptcy filing to all of her creditors.

53.     On May 12, 2020, Trans Union received Plaintiff's Third Dispute Letter.

54.     In response to the Third Dispute Letter, Trans Union mailed to Plaintiff its reinvestigation results, dated May 16, 2020.

55.     In its May 16, 2020 reinvestigation results, Trans Union failed again to correct the information that Plaintiff disputed with respect to each of the four ACS Student Loan accounts. The reinvestigation results revealed that Trans Union continued to report each of those accounts with a derogatory pay status of "Account Included in Bankruptcy". Trans Union also updated the remarks about each of those accounts again, changing the references to "Chapter 7 Bankruptcy" back to "Chapter 13 Bankruptcy". Trans Union also continued to indicate that the derogatory reporting about each of the ACS Student Loan accounts would continue until May 2021.

56.     The May 16, 2020 reinvestigation results also revealed that Trans Union began reporting inaccurate and derogatory information about several of Plaintiff's other credit accounts that had previously been reported accurately. Specifically, with respect to two (2) Capital One Bank USA credit accounts that were each opened *after* the filing of Plaintiff's 2016 Bankruptcy and subsequent conversion of her case (the "Capital One Accounts"), as well as nine (9) other

educational loan accounts serviced by the Department of Education/Navient (the "Nine Navient Accounts"), Trans Union was reporting a pay status of "Account Included in Bankruptcy" and remarks reflecting "Chapter 13 Bankruptcy". The information that Trans Union was reporting about each of the Capital One Accounts and the Nine Navient Accounts was incorrect because these loans were all either educational loans excepted from discharge, or loans that were opened after the filing of Plaintiff's 2016 Bankruptcy filing and conversion of that case to chapter 7. None of the Capital One Accounts or the Nine Navient Accounts were included or discharged in Plaintiff's bankruptcy case.

57.     In or around June 2020, Plaintiff obtained an updated copy of her Trans Union credit disclosure dated June 30, 2020 (the "2020 Disclosure"), which confirmed that Trans Union was still reporting Plaintiff's four ACS Student Loan accounts, the two Capital One Accounts, and the Nine Navient Accounts with an inaccurate and derogatory pay status of "Account Included in Bankruptcy" and remarks referencing "Chapter 13 Bankruptcy". The 2020 Disclosure further revealed that Trans Union was also inaccurately reporting an additional nine Navient educational loan account trade lines—in addition to the nine Navient Loan accounts initially identified in the May 16, 2020 reinvestigation results—with remarks referencing "Chapter 13 Bankruptcy" (the "Additional Nine Navient Trade Lines").

58.     In or around October 2021, Plaintiff obtained another updated copy of her Trans Union credit disclosure dated October 22, 2021 (the "2021 Disclosure"), which confirmed that Trans Union was still reporting the two Capital One Accounts and the Nine Navient Accounts with an inaccurate and derogatory pay status of "Account Included in Bankruptcy" and remarks referencing "Chapter 13 Bankruptcy", and the Additional Nine Navient Trade Lines with remarks referencing "Chapter 13 Bankruptcy".

59.     The 2021 Disclosure also revealed that, sometime after Plaintiff obtained the 2020 Disclosure, Trans Union finally deleted from Plaintiff's credit file the four ACS Student Loans that Plaintiff previously disputed in her First Dispute Letter, Second Dispute Letter, and Third Dispute Letter. Upon information and belief, the derogatory information regarding the ACS Student Loans was deleted from Plaintiff's credit file not in response to any of Plaintiff's disputes but, instead, because 15 U.S.C. § 1681c(a) required that the inaccurate derogatory information that antedated the report by more than seven years be deleted from Plaintiff's credit file.

60.     Trans Union received three dispute letters from Plaintiff, but in each instance, it failed to conduct the reinvestigations required by law. Instead, Trans Union merely "parroted" inaccurate information dictated to it by Conduent.

61.     Trans Union has been on notice for decades that the reinvestigation requirements of § 1681i of the FCRA "must consist of something more than merely parroting information received from other sources." *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

62.     Despite ample notice that the mere "parroting" of disputed information is unlawful, Trans Union shirks its statutory responsibility to reinvestigate by fully outsourcing the handling of its consumer disputes to a vendor in Mumbai, India named Teleperformance (previously named "Intelenet").

63.     Trans Union scans consumer disputes in batches and forwards them to Teleperformance for processing.

64.     Teleperformance employees, who are not allowed to spend more than 5 minutes on one consumer dispute, skim each letter and then select a 2-digit code from a drop-down menu

to categorize the dispute. Teleperformance employees do not investigate the underlying merits of the consumer disputes.

65.     Trans Union has successfully argued the position that it has no control over Teleperformance employees. *See,* e.g., *Wilcox v. Servis One, Inc.*, No. 1:19-cv-02535-RDB (D.Md. Apr. 14, 2020) (Docket No. 71) (ruling that Trans Union did not have control or ability to produce for deposition Indian employees of Intelenet).

66.     Trans Union chose to forgo fulfilling its statutory duty to reinvestigate Plaintiff's disputes.

67.     Trans Union had knowledge that it was reporting inaccurate and derogatory information about Plaintiff's four ACS Student Loan accounts, but it deliberately chose to ignore this knowledge, and instead chose to continue to report the derogatory information on Plaintiff's credit.

68.     Upon information and belief, despite receiving each of Plaintiff's disputes, Trans Union continued to report on Plaintiff's credit file the derogatory information regarding the ACS Student Loans until May 2021, as it indicated it would in each of the respective ACS Student Loan trade lines set forth in the 2019 Disclosure, the January 3, 2020 reinvestigation results, the March 16, 2020 reinvestigation results, the May 16, 2020 reinvestigation results, and the 2020 Disclosure.

69.     Upon information and belief, Trans Union published to third parties multiple inaccurate consumer reports about Plaintiff that contained the inaccurate and derogatory information about the four ACS Student Loan accounts disputed by Plaintiff.

**F.      Failure to Correct Inaccurate and Derogatory Reporting by Conduent.**

70.      Upon information and belief, after receipt of the each of Plaintiff's letters disputing information about the ACS Student Loans, Trans Union forwarded Plaintiff's disputes to Conduent.

71.      Upon information and belief, Conduent utilized the e-OSCAR automated system ("e-OSCAR") and Automated Consumer Dispute Verification ("ACDV") procedures to process Plaintiff's disputes.

72.      Upon information and belief, Conduent was provided notice of all of Plaintiff's disputes to Trans Union and, despite receiving these notices, failed and refused to investigate and correct its inaccurate reporting.

73.      Conduent was aware of the correct way to report the ACS Student Loans on Plaintiff's credit following the entry of her Discharge in the 2016 Bankruptcy.

74.      Over twenty years ago, the Consumer Data Industry Association (the "CDIA") created a standardized, electronic format named "Metro 2," for furnishers of information (like Conduent) to use in reporting to the Nationwide Consumer Reporting Agencies (the "CRA's," which includes Trans Union).[1] Furnishers receive training on how to properly implement the Metro 2 standards, which are laid out in the CDIA's Credit Reporting Resource Guide.

75.      According to the standards in the Credit Reporting Resource Guide, upon entry of Plaintiff's Discharge, Conduent should have removed any previously reported bankruptcy indicators and thereafter reported account information as it normally would regarding each of the ACS Student Loan accounts.[2]

---

[1] CFPB, KEY DIMENSIONS & PROCESSES IN THE U.S. CREDIT REPORTING SYSTEM (Dec. 2012), *available at* http://files.consumerfinance.gov/f/201212_cfpb_credit-reporting-white-paper.pdf.
[2] Consumer Data Industry Association, Credit Reporting Resource Guide 6-15 (2018).

76.     Conduent chose to not furnish information regarding Plaintiff's ACS Student Loans to Trans Union according to the standards laid out in the Credit Reporting Resource Guide. Instead, even after receiving notice of all of Plaintiff's disputes, Conduent chose to furnish inaccurate information to Trans Union, indicating that each of the ACS Student Loans—which were not actually discharged—were included in or otherwise affected by Plaintiff's bankruptcy.

77.     Because Conduent furnished inaccurate and derogatory information to Trans Union, and then chose not to correct the inaccurate information it was furnishing despite receiving notice of several disputes from Plaintiff, inaccurate and derogatory information continued to be reported on Plaintiff's credit.

**G.      Recent Publication of Inaccurate Information on Plaintiff's Credit File**

78.     On or about September 15, 2020, Plaintiff applied for credit, in the form of an Indigo Card, with Celtic Bank. In connection with Plaintiff's credit application, Trans Union furnished to Celtic Bank a consumer report concerning Plaintiff, which contained inaccurate and derogatory information regarding the ACS Student Loans.

79.     On or about February 12, 2021, Plaintiff applied for credit, in the form of a CareCredit Card, with Synchrony Bank. Plaintiff's application was denied. Upon information and belief, Synchrony Bank relied upon inaccurate and derogatory information contained in a consumer report provided by Trans Union in making its decision to deny the extension of credit to Plaintiff.

80.     On or about September 6, 2021, Plaintiff applied for credit with WebBank. In connection with Plaintiff's credit application, Trans Union furnished to WebBank a consumer report, which contained inaccurate and derogatory information concerning Plaintiff.

15

81.    On or about September 15, 2021, Plaintiff applied for credit, in the form of a personal loan, with Bank of America. Plaintiff's application was denied. Upon information and belief, Bank of America relied upon inaccurate and derogatory information contained in a consumer report provided by Trans Union in making its decision to deny the extension of credit to Plaintiff.

82.    On or about October 26, 2021, Plaintiff applied for credit, in the form of an Apple Card, with Goldman Sachs Bank. In connection with Plaintiff's credit application, Trans Union furnished to Goldman Sachs Bank a consumer report, which contained inaccurate and derogatory information concerning Plaintiff.

83.    In an adverse action notice dated October 26, 2021, Goldman Sachs Bank advised Plaintiff that her credit application was denied, and that the decision to deny her credit application was based in whole or in part on derogatory information appearing in the consumer report concerning Plaintiff that Trans Union furnished to Goldman Sachs Bank on October 26, 2021.

84.    Through their violations of Plaintiff's rights under the FCRA, Trans Union and Conduent have both caused damage to Plaintiff.

### V.

### CLAIMS FOR RELIEF

### COUNT ONE:
### VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681e(b) (TRANS UNION)

85.    Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

86.     Trans Union has violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished and maintained concerning Plaintiff.

87.     As a result of Trans Union's violations of 15 U.S.C. § 1681e(b), inaccurate and derogatory information regarding the ACS Student Loans was reported on Plaintiff's credit and was published to third parties.

88.     As a result of Trans Union's violations of 15 U.S.C. § 1681e(b), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

89.     The violations by Trans Union were willful, rendering Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Trans Union was negligent, entitling Plaintiff to recovery under 15 U.S.C. § 1681o.

90.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Trans Union in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

### COUNT TWO:
### VIOLATION OF THE FAIR CREDIT REPORTING ACT
### 15 U.S.C. § 1681i(a) (TRANS UNION)

91.     Plaintiff realleges and incorporates all other factual allegations set forth in this complaint.

92.     After Plaintiff disputed the inaccurate information in her consumer reports, Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct reasonable reinvestigations to

determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file.

93.     After Plaintiff disputed the inaccurate information in her consumer reports, Trans Union violated 15 U.S.C. § 1681i(a)(1) by failing to conduct any reinvestigation at all to determine whether the disputed information was inaccurate. Instead of conducting its own investigation of Plaintiff's disputes, as the FCRA requires consumer reporting agencies to do, Trans Union chose to delegate its investigation responsibilities to Teleperformance, a third party that Trans Union is unable to exert control over. Trans Union's delegation of its investigation duties to a third party who is not an agent for Trans Union resulted in Plaintiff's disputes to Trans Union not being reinvestigated at all by Trans Union (or any other party).

94.     After Plaintiff disputed the inaccurate information in her consumer reports, Trans Union violated 15 U.S.C. § 1681i(a)(4) by failing to review and consider all relevant information submitted by Plaintiff.

95.     After Plaintiff disputed the inaccurate information in her consumer reports, Trans Union violated 15 U.S.C. § 1681i(a)(5)(A) by failing to promptly delete the disputed inaccurate items of information from Plaintiff's credit file or modify the items of information upon a lawful reinvestigation.

96.     As a result of Trans Union's violations of 15 U.S.C. § 1681i(a), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

97.     The violations by Trans Union were willful, rendering Trans Union liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In

the alternative Trans Union was negligent, which entitles Plaintiff to recovery under 15 U.S.C. §

1681o.

98.     Plaintiff is entitled to recover actual damages, punitive damages, costs, and

attorney's fees from Trans Union in an amount to be determined by the Court pursuant to 15

U.S.C. § 1681n and § 1681o.

### COUNT THREE:
### <u>VIOLATION OF THE FAIR CREDIT REPORTING ACT</u>
### 15 U.S.C. § 1681s-2(b)(1) (CONDUENT)

99.     Plaintiff realleges and incorporates all other factual allegations set forth in this

complaint.

100.    On one or more occasions within the past two years, by example only and without

limitation, Conduent violated 15 U.S.C. § 1681s-2(b)(1)(A) by failing to fully and properly

investigate Plaintiff's disputes.

101.    On one or more occasions within the past two years, by example only and without

limitation, Conduent violated 15 U.S.C. § 1681s-2(b)(1)(B) by failing to review all relevant

information provided by Trans Union.

102.    On one or more occasions within the past two years, by example only and without

limitation, Conduent violated 15 U.S.C. § 1681s-2(b)(1)(E) by failing to modify the

representations about the four ACS Student Loan accounts within Plaintiff's credit file with

Trans Union by removing all references to a bankruptcy filing from the respective ACS Student

Loan account trade lines.

103.    The law in this District, the Fourth Circuit, and even nationally was long ago

articulated to require a detailed and searching reinvestigation by a creditor when it receives a

consumer's FCRA dispute through a CRA. See *Johnson v. MBNA*, 357 F.3d 426 (4th Cir. 2004).

104.    Conduent was aware of the *Johnson v. MBNA* FCRA decision by the Fourth Circuit when it followed the ACDV procedures used regarding Plaintiff's disputes.

105.    Conduent understood the nature of Plaintiff's disputes when it received them from Trans Union.

106.    Upon information and belief, the procedures that Conduent's employee(s) or agent(s) followed regarding Plaintiff's FCRA disputes through e-Oscar were the procedures that Conduent intended its employees or agents to follow.

107.    Upon information and belief, Conduent's employee(s) or agent(s) did not make a mistake in the way in which they followed Conduent's procedures when they received, processed, and responded to the respective ACDV's from Trans Union.

108.    As a result of Conduent's violations of 15 U.S.C. § 1681s-2(b)(1), inaccurate and derogatory information regarding the ACS Student Loans continued to be reported on Plaintiff's credit even after she submitted several letters disputing that information.

109.    As a result of Conduent's violations of 15 U.S.C. § 1681s-2(b)(1), Plaintiff suffered actual damages, including, but not limited to loss of credit, postage costs, travel costs, damage to reputation, embarrassment, humiliation, and other emotional and mental distress.

110.    The violations by Conduent were willful, rendering Conduent liable for punitive damages in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n. In the alternative, Conduent was negligent, which entitles Plaintiff to recovery under 15 U.S.C. § 1681o.

111.    Plaintiff is entitled to recover actual damages, punitive damages, costs, and attorney's fees from Conduent in an amount to be determined by the Court, pursuant to 15 U.S.C. § 1681n and § 1681o.

## VI.

### DEMAND FOR RELIEF

Plaintiff therefore respectfully requests that this Court:

(1)     Award Plaintiff actual and punitive damages for violations of the FCRA by Trans

Union and Conduent;

(2)     Award Plaintiff attorney's fees and costs under the FCRA;

(3)     Award Plaintiff pre-judgment and post-judgment interest at the legal rate; and

(4)     Award other relief as the Court deems appropriate.

**TRIAL BY JURY IS DEMANDED**.

**ANGELA LYNETTE COY**

By:

/s/ Stephen F. Relyea
Emily Connor Kennedy, VSB# 83889
Mark C. Leffler, VSB# 40712
Stephen F. Relyea, VSB# 77236
Boleman Law Firm, P.C.
2104 W. Laburnum Ave, Suite 201
Richmond, VA 23227
(804) 358-9900 – Telephone
(804) 358-8704 – Facsimile
Email: eckennedy@bolemanlaw.com
Email: mcleffler@bolemanlaw.com
Email: sfrelyea@bolemanlaw.com

*Counsel for Plaintiff*